Next case is Nebco Steel Erectors v. Workers' Compensation Comm'n, 5-0-9-0-2-1-A. Counsel, please. May it please the Court, Scott Kelametz here for the employer, Nebco Steel, Counsel. There are really just a few issues in this case, but the primary issue is accident. The employee alleges a low back injury that occurred on December 1, 2004. It is our position that the finding of accident, that the Circuit Court affirm the Commission's decision, is against the manifest weight of the evidence. And, in fact, really there's no evidence in the record to suggest anything happened on December 1, 2004. After the alleged accident of employee, he presented to Dr. Evenson, who was his chiropractor. Dr. Evenson had actually treated him for a low back condition. The original injury was October 22, 2003. That case was also filed, but is not actually a part of this case. Dr. Evenson had treated him for the low back prior. He also saw Dr. Kennedy for that October 22, 2003 injury. He was released in August of 2004. So the next time he presents to Dr. Evenson is December 2, 2004. At that time, he goes to Dr. Evenson and he actually, he notes that he was actually having back pain for a few weeks prior that he was trying to get a hold of. There's no mention actually in that note of a work injury. And there's no, it just says flare up of low back pain that he had been trying to deal with. Dr. Evenson, he continues to treat with Dr. Evenson. I had counted it up from December 2, 2004 up to March 24, 2005. There was nearly 20 visits with Dr. Evenson. And at no time was there ever a mention of a work injury that he was alleging a trial that happened on December 1, 2004 where he was lifting a roof joist. Was this a repetitive trauma case or a specific trauma injury? I asked that of Dr. Kennedy at the time of his deposition. And if you look at the witness, Keith Ugia, if you look at the employee's testimony, and no, he says it was a specific incident. He says that he was fine or semi-fine, I guess, after August of 2004 from the first accident that Dr. Kennedy released him up until December 1, 2004 when he lifts this roof joist. And I think at the time his testimony indicated that he was in such severe pain it was relentless. It was even worse than after what he had experienced in October of 2003. So, no, I mean, all the evidence that I saw through the doctor's, through his testimony, through the witness's testimony. If you look at Keith's testimony, it was that he had been working with the employee for a few weeks, never said anything. And then, and actually Keith didn't know the date of accident, but he said that he remembers this guy telling him that he was having trouble with his back. Did that happen on December 1, 2004? Obviously, that's not our position. And you would assume that he knew how to report an injury. I mean, he reported the first one from October of 2003 to Dr. Evenson, had treated with him, had treated with Dr. Kennedy, had some injections by a Dr. Graham in that case. He just goes back to Dr. Evenson and there really is no mention of work injury at that time. The first time it actually appears is March 24, 2005 with Dr. Kennedy. Dr. Kennedy actually takes a history of lifting a roof joist, but that happened in November. So, at the time of Dr. Kennedy's deposition, Dr. Kennedy, I asked him if this guy told him it was your understanding it was a specific incident. He said yes. Dr. Kennedy admitted that he had no actual injury date of December 1, 2004. His causation opinion all related back to, well, initially it was October 22, 2003. At the time of his deposition, which was several years later, I believe in October of 2007, that's at the point that he changed and said that after review of his records to him, the evidence showed that it was all due to this December 1, he said November or December, but again he did admit that there was no December 1, 2004 accident that he had. Well, why couldn't the incident on December 1 simply have been considered an aggravation of a preexisting condition? It would still be compensable, wouldn't it? Well, then you might have, I don't know what the coverage period was because it was December 1, 2004, but if it's aggravated before December 2004 and October 22, I think it's the same employer but different insurance company, then you have a possible, you know, if that all gets taken into account, then maybe it really just goes back to the October 22, 2003 accident, and then this client or the insurance company is not on the hook. I don't know. I just know that they kept with December 1, 2004. There's just nothing to show that there's a December 1, 2004 accident. You know, I know that... Well, why does it have to be, though? Well, I mean, the case law is such that you have to give a definitive time, place, location of accident. What about if it's a repetitive trauma? Isn't it the manifestation date? Right. If it's repetitive trauma, but he's not claiming repetitive trauma. I mean, and again, that was asked, and he claimed it was a specific incident. He says that he was fine after August of 2004 that he was released. He was continuing to work. He was fine until December 1, 2004. He's lifting a roof joist. This is March 24, 2005 is what he saw in Kennedy, but again, it goes back. There's no history of injury December 2, 2004, a day after. March 24, 2005, he tells Dr. Kennedy. He doesn't tell anything to Dr. Evenson from those three or four months. You know, I know the arbitrator and commission, they pin it on that this guy, you know, it's clearly that this guy's a poor historian. You would think that based on his testimony that if it really was this severe and relentless pain that he had, even more severe after October 22, 2003, of which he had treated for over a year, you would think that December 2, 2004, he would have told Dr. Evenson that, yeah, you know, I was injured yesterday lifting a roof joist. You go through Dr. Evenson's records. I believe he returns to Dr. Evenson on December 6, 2004. Tells him he's having some back pain pushing on a pipe that aggravated. December 8, 2004, he's lifting five gallons of pool rock. You go back down. He continues to go to Dr. Evenson. December 16, he's having some trouble with plywood on a roof today. So had something happened on December 1, as the employee claimed, you would just assume that it's not poor historian. I mean, he would have told Dr. Evenson December 2, 2004, or he would have told him within those 20-something visits that he had before he gets to Dr. Kennedy. And then on top of that, you would assume that he would tell Dr. Kennedy that, yes, I injured myself December 1, 2004. Well, we're making a lot of assumptions. Let's just pin it down. Didn't Kennedy testify that after reviewing the course of Klayman's treatment, he determined that in November or December 2004, Klayman aggravated his degenerative back condition? Didn't he say that? Kennedy did say that, yes. All right. Well, why can't the commission believe that? I didn't say they couldn't believe it, but if you're claiming a specific incident and there's nothing to show that there is a specific incident, and that Dr. Kennedy hadn't reviewed Dr. Evenson's records, he didn't have all the information. Goes to wait, doesn't it? Well, again, and I think that's against the manifest weight of the evidence. I think if you look at this in its entirety, there is no December 1, 2004 accident. I'm not even sure there's a work accident. If you look at the contemporaneous medical records, and again, with Dr. Gragnani, who was the examining physician for the employer, he pins it back. Well, actually, Dr. Kennedy did as well. They initially pinned it all back on the October 22, 2003 accident. If you don't have a December 1 or you don't believe the guy that he had a December 1, 2004 accident, or when it happened or what happened, then everything goes back to, it's not on December 1 and it goes back to October 22, 2004. What do you mean December 1 accident? Again, couldn't it have aggravated a preexisting condition? If something happened on December 1, I would say yes. Didn't the claimant testify that something happened on December 1 when he was lifting these things? Didn't he testify? He testified, yes, lifting a roof chaise on December 1. So he testified something happened. At the time of trial, which is how many years later. If you look at the evidence in the record, there's nothing to show that anything happened on December 1 other than his testimony at trial. The claimant's testimony. Other than his testimony at trial. Which the commission, would you concede, could hang their hat on? In the entirety? Yes. Yeah, you could hang your hat on if that was the only thing, but that's why we're here today. It's our position that it's against the manifest weight of the evidence. I understand that argument, but you can't say there's nothing in the record to support it. Okay, other than the claimant's testimony at trial several years later, that yes, he was injured on December 1. Again, if he's telling us that at trial, then why isn't it in any of these medical records? Why isn't it the witness, the witness that was working with him that day? You know, again, I just think with the accident issue, that it is a manifest weight. I mean, I guess other than his testimony at trial about the December 1, that's all he has. Well, they accepted that, though, didn't they? They did. They did, and that's why we're here. The other issue is causation. Causation is basically based on accident because of this October 22, 2003 accident. Dr. Kennedy didn't have the initial records from Dr. Evenson in December. Initially related it to October 22, 2003. Didn't have the guy's testimony at the time of trial. We took his deposition before the trial, so obviously he didn't know there was a December 1, 2004 accident. He actually related it to whatever happened in November, which going back to December 2, 2004, to Dr. Evenson, you know, whatever happened, there's no work injury listed or reported to Dr. Evenson as of December 2, 2004, and whatever. I don't know what happened in November. I mean, I don't know. But anyway, causation kind of flows in with accident, and then the last issue was permanent total, but we briefed that and won't bore you with that. Thank you. Counsel, please. Good morning, Matt. Please support. Mary Massa here for the employee, Robert Lee. The three issues in the case, state of accident, causation, permanent total, disability determination by the arbitrator, these issues were all found in favor of the employee, and the commission unanimously affirmed the arbitrator's decision on those issues. Those issues involve interpretation of medical testimony, to which the commission's determinations are entitled to significant deference, including not substituting the decision, your decision, or what you might have reached a decision in that case for what the commission decided. So looking at the date of accident, which appears to be the brunt of the discussion by my opposing counsel this morning, the location of the accident was at the Grant City Army Depot. They were lifting purlins. This was testified to by my client. The location of the accident, as well as the fact that the employee complained about significant back pain after about a week and a half on that job, after which time he wasn't able to do that job, that was testified to by Keith Ugia, which is significant corroboration for the employee's testimony as to the accident date. Now the fact that the employee may have been having some back symptoms during that maybe week and a half period of time, up to the point where the pain in his back was so bad that it caused him or drove him to go return to the chiropractor that he had seen for his earlier back injury, Dr. Revenson, that is not inconsistent with Mr. Ugia's testimony. And it's certainly not inconsistent with the manifestation date of December 1st because it was the very next day that he went to see Dr. Revenson. So I don't believe that the information in the medical records of Dr. Revenson is at all inconsistent with the accident date, a manifestation date of December 1st of 2004. Now with regard to causation, yes, there was a prior accident in October of 2003. It involved his low back. He did treat with Dr. Revenson for some period of time. Dr. Revenson referred him to Dr. Kennedy for a surgical evaluation. Dr. Kennedy did not believe he needed surgery, but did think he could benefit from some pain management. And the petitioner did go and have some injections on his back. And he was released at maximum medical improvement by both Dr. Revenson and Dr. Kennedy by August of 2004. But significantly after this first injury, the petitioner was able to continue his work. He had a period of time between October of 2003, October 21st of 2003, and December 21st of 2003, I believe, was when he returned to work. And he did not miss any work as an iron worker during that period subsequent to returning to work in December of 2003. This despite continuing to receive some pain management treatment during this interim period of time and before he was actually said to be at maximum medical improvement by Dr. Revenson and Dr. Kennedy. Now interestingly, and I think importantly, is the fact that that release at MMI by Dr. Kennedy was without any restrictions. And he did work during this entire period of time without stop as an iron worker until December 1st of 2004 when he had what he described as severe, unrelenting, unabating pain in his low back more located on the right side. And also significantly, he had complaints of leg pain following this December 1st, 2004 accident. And Dr. Dragnani, the IME examiner for the respondent in this case, said that with the pre-existing condition that petitioner had, the spondylolisthesis, which is the slippage of L5 over S1, the case doesn't become surgical until the patient is complaining of leg pain. And this is what the petitioner testified that following the surgery that Dr. Kennedy performed, he didn't feel like his leg was going to give out anymore. So if you look at, if you compare and contrast the progress of his medical treatment following the October of 2003 accident compared to the treatment he received after the December 1st, 2004 accident, he was not able to benefit from conservative treatment. Counsel, this claimant, this is a repetitive trauma case in your opinion, correct? Well, I think you have to look at it that way because he had some symptoms in November and it's true the arbitrator found that the petitioner wasn't a good historian, but someone can have some back pain without having to say, oh, I need to rush to the doctor. It wasn't until December 2nd that he felt the need to go and seek treatment and that was the day after the accident date that he testified to. So if you look at the issue of causation, if there is a break in the chain of events, including the employee's ability to perform manual duties prior to the eighth date of the accident and then a decreased ability to perform them immediately following the accident, then you've established causation. And also look at Keith Eugea's testimony that after this accident, the petitioner wasn't able to do his job as an iron worker. And the petitioner in fact testified that in order to continue working until he was taken off work by Dr. Kennedy in March of 2005, he had to ask his fellow employees to help him lift things and carry things. And this is something that directly impacted on his ability to perform his job as an iron worker. And that dovetails us into the issue of permanency. Dr. Kennedy imposed what the arbitrator considered to be significant restrictions, a 40-pound lifting restriction as well as no more than three times in an hour, stooping, lifting, or twisting. And Dr. Dragnani didn't disagree with the 40-pound lifting restriction but said he wouldn't put any more than a 35-pound lifting restriction on. And he did not put any restriction with regard to the twisting, bending, or stooping more than three times an hour. Now, Dr. Michael McKee was hired as a vocational consultant by the respondent to assist the petitioner. After Dr. Kennedy recommended that the petitioner not return to work as an iron worker, Dr. McKee had him do job searches. He felt like Plaintiff was consistent in the number of job searches he did. But then after a period of six months, apparently the petitioner was getting very, very frustrated in his job search efforts. And he became what the respondent considered to be non-compliant. He put down on job applications when asked, why did you leave your last employment? Had a back injury or had restrictions on lifting. And this was not what he was instructed to do by the vocational expert. He was instructed to say, we'll explain, so that he could possibly have an interview with this prospective employer and then can possibly convince the prospective employer that he would be able to do this job despite the fact that he had this back injury and that he had these restrictions. Now, in an odd lot term total, the burden of production is first with the petitioner. And the arbitrator found that the petitioner made a bona fide job search. In fact, I think the testimony was that he had done 800 job searches in the 13 months that he did job searches. So even after respondent terminated his maintenance and stopped working with him as a vocational expert, he continued to do job searches for an additional seven months. So I think that's got a lot of evidence in the record that he did a bona fide job search. And the commission found that he did. And so then we go to the employer, and what did the employer show in terms of how this employee could have worked or could have found work in a stable labor environment? And the only thing that Dr. McKee could point to in his deposition was, well, he didn't think that the restriction on lifting and stooping and bending, or bending, stooping, and twisting, rather, was reasonable, but he worked with that anyway. He believed that under Dr. Greg Nani's restrictions, this guy could have worked in a light to medium job. And if you didn't look at the restrictions that Dr. Kennedy had with regard to the bending and stooping and twisting, then he could at least work in a light duty job. Well, you can't just pick and choose from the restrictions. So the employer also, Dr. McKee didn't do a labor market survey,  which he admitted, Dr. McKee admitted, would have been the best indicator of what this person's loss of earning capacity really was. So our position is that they did not meet their burden on the odd light proof, and so the current total disability determination has significant weight. It's supported by the manifest weight of the evidence, and it should be supported as well. You said who did not meet the burden on the odd light? The employers has a burden after the petitioner of going forward with showing that some kind of suitable work is regularly and continuously available to the claimant. The claimant has the initial burden. Exactly right. I want to clarify that. So unless you have any further questions, I would ask that the trial court's decision of April 7th of last year be affirmed in its entirety. Thank you very much. Rebecca? I just wanted to reiterate that, yes, I do agree it could be a repetitive trauma case, but that's not how it was presented. That's not what the employee's testimony was at trial. If you go back and look at Keith Ugia's, the witness's testimony, it was that he was working with an employee for a couple weeks and he had no problems, and then this one day event, Dr. Kennedy testified that it was a specific event. So the manifestation date, could it be December 1st? If you're using a repetitive trauma theory, possibly. I guess December 2nd probably would even be a better one. But it's not. It's a specific incident. And all the evidence, the only thing in the record to show is what employee testified at trial, December 1st, 2004. But if you look at Dr. Evenson's record, he goes December 2nd, 2004, and his pain is already aggravated before that. So, again, we just ask that the court make a decision. Thank you, counsel. The court will take the matter under advisory for disposition.